Hillsborough-northern judicial district
No. 94-150

# THE STATE OF NEW HAMPSHIRE

v.

# KARIN DAOUD

June 27, 1996

*Jeffrey R. Howard*, attorney general (*Cynthia L. White*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, *Albert E. Scherr*, of Concord, and *Rebecca A. Thorne*, public defender, of Stratham (*Mr. Duggan* and *Ms. Thorne* on the brief, and *Mr. Scherr* orally), for the defendant.

THAYER, J. The defendant, Karin Daoud, was convicted of driving while intoxicated, *see* RSA 265:82, I(a) (Supp. 1994), second offense. Before trial, she filed a notice of duress defense alleging that her boyfriend had forced her to drive while intoxicated. The Superior Court (*Perkins*, J.) ruled, however, that the defendant could not present evidence of duress. On appeal, the defendant challenges that ruling and argues that she should have been permitted to introduce evidence of prior abuse by her boyfriend and evidence of battered woman's syndrome because both are relevant to her duress defense. We affirm the defendant's conviction but remand for resentencing.

The following facts were adduced at trial. On August 24, 1993, the defendant and her boyfriend, John Hilane, spent the evening socializing with friends in Manchester. They went to a bar where the defendant consumed at least four mugs of beer. When the bar closed, the group decided to continue the party at a house nearby.

At approximately 2:00 a.m., the defendant offered to drive a friend, Gina Lynch, home from the party. She wanted to take Lynch's car and leave it for her to use the following day, so she asked Hilane to pick her up. Hilane agreed and decided to follow the defendant because he did not know where Lynch lived. During the trip, however, he got lost and returned to the party. When the defendant realized that Hilane was not coming, she drove Lynch's car back to the party and confronted him. The couple argued. When they left the party later that night, Hilane decided to walk home and the defendant took her car.

The defendant was the first to arrive home. She was upset with Hilane and immediately began looking for a gun he kept in the apartment. When she could not find the gun, she concluded that Hilane had it with him. Thinking it would be safer to leave the apartment than to stay overnight, the defendant decided to drive to Massachusetts and live with Hilane's sister "until things cooled down." She took their daughter, placed her in the car, and left the apartment area. Before heading to Massachusetts, however, she

drove around the neighborhood looking for Hilane to make certain that he planned on returning home.

The defendant met Hilane near the couple's apartment. After a brief exchange, which left the defendant feeling threatened, she drove off. She returned a few moments later, however, and the couple exchanged more words. At the time of the second conversation, the defendant was in her car and Hilane was on the balcony of their apartment. When the defendant drove off again, Hilane called the police, telling them that he believed the defendant was driving drunk with their child in the back seat. He provided police with a description of the car.

Officers David Connare and George Baker responded to Hilane's call. Using Hilane's description, they spotted the defendant's car and, based on their subsequent observations, concluded that the defendant was intoxicated. They arrested her and charged her with driving while intoxicated (DWI), second offense, and endangering the welfare of a child, *see* RSA 639:3 (1986).

Before trial, the State entered *nolle prosequi* on the charge of endangering the welfare of a child. The defendant then filed a notice of duress defense regarding the remaining DWI charge and, in subsequent motions, explained the theory of her defense. She argued that she drove away from her apartment under duress and that consequently her conduct was not voluntary as required by RSA 626:1, I (1986). To prove duress, the defendant planned to introduce evidence about battered woman's syndrome and evidence of prior abuse by Hilane.

At trial, the defendant formally requested that she be allowed to present a duress defense. The State objected, arguing that duress is not a defense in New Hampshire because it is not part of the Criminal Code, and that "the crime of driving while intoxicated does not have any requisite mental state . . . and since the defense of duress relates to a defendant's mental state, it is irrelevant in this case."

Following the State's presentation of its evidence, the trial court ruled that a duress defense was not available to the defendant "under these circumstances and in view of the facts presented in the State's case and with regard to a charge of DWI." Accordingly, the court refused to allow the defendant to present evidence of duress. After two days of testimony, the jury returned a verdict of guilty.

## I. The Voluntary Act Statute

We begin with the defendant's assertion that duress is a statutory defense in New Hampshire. She argues that the defense is codified in the State's voluntary act statute, which excuses a defendant from

criminal liability if the conduct upon which the liability is based is involuntary. *See* RSA 626:1, I. According to the defendant, Hilane's conduct on August 24, combined with his earlier abuse, forced her to leave the apartment under the influence of alcohol and therefore made her conduct involuntary.

The defendant's argument is based on an overly broad reading of the voluntary act statute. RSA 626:1, I, provides, in relevant part, that "[a] person is not guilty of an offense unless . . . criminal liability is based on conduct that includes a voluntary act." In interpreting that language, "this court is the final arbiter of the intent of the legislature." *State v. Arris*, 139 N.H. 469, 471, 656 A.2d 828, 829 (1995). We look to the words of the statute because they are the touchstone of the legislature's intent, *see Chambers v. Geiger*, 133 N.H. 149, 152, 573 A.2d 1356, 1357 (1990), and we construe those words according to their fair import and in a manner that promotes justice, *see* RSA 625:3 (1986).

██ ██ RSA 626:1, I, does not excuse criminal acts committed under duress. Nothing in the statute's language states that duress makes criminal conduct involuntary. Had the legislature intended to adopt that view, it could have done so explicitly. *See State v. Gagnon*, 135 N.H. 217, 219, 600 A.2d 937, 938 (1991). Moreover, RSA 626:1, I, is identical to the main section of the Model Penal Code's voluntary act provision. *See* MODEL PENAL CODE AND COMMENTARIES § 2.01(1), at 212 (1985). Later sections of the Model Penal Code make clear that conduct is involuntary under section 2.01 only if it results from reflexes, convulsions, unconsciousness, sleep, hypnosis, or other circumstances that do not involve a volitional act. *See, e.g.*, MODEL PENAL CODE AND COMMENTARIES, *supra* § 2.01(2), at 212. Duress is not included in that list. We believe that the similarity between the operative language in subsection 2.01(1) and RSA 626:1 indicates that they share a common meaning; neither treats conduct committed under duress as involuntary.

██ In support of her position, the defendant focuses on comments written by the 1969 commission charged with codifying New Hampshire's criminal laws. In discussing the voluntary act statute, the commission wrote that the statute "ought to be broad enough to preclude criminal liability under circumstances of duress." REPORT OF COMMISSION TO RECOMMEND CODIFICATION OF CRIMINAL LAWS § 571:1 comment (1969). The defendant urges us to accept those comments as law. Although the comments of the commission may be useful in interpreting the Criminal Code, *see State v. Plummer*, 117 N.H. 320, 326, 374 A.2d 431, 435 (1977), they are not law. Given our interpretation of the statutory language, we decline

to adopt the commission's comment and conclude that the trial court did not err in refusing to allow the defendant to present a duress defense based on RSA 626:1, I.

Our conclusion is supported by other factors. First, commentators agree that duress does not make criminal conduct involuntary. As one commentator has explained:

> The rationale of the [duress] defense is not that the defendant, faced with [an] unnerving threat of harm unless he does an act which violates . . . the criminal law, . . . has not engaged in a voluntary act. Rather it is that, even though he has done the act the crime requires and has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is justified.

1 W. LAFAVE & A. SCOTT, CRIMINAL LAW § 5.3(a), at 614–15 (1986) (footnotes omitted); *cf.* RSA ch. 627 (justification defenses). The commentators responsible for drafting the Model Penal Code also expressed wide agreement that voluntary act statutes should only excuse criminal conduct where the "actor is moved by force, as distinguished from threat." *See* MODEL PENAL CODE AND COMMENTARIES, *supra* § 2.01, at 221.

■■ In addition, our prior cases convince us that duress cannot, as a matter of law, make criminal conduct involuntary within the meaning of RSA 626:1, I. When we have excused a defendant from criminal liability on the grounds that certain conduct was involuntary under RSA 626:1, I, we have emphasized that the defendant did not choose to commit the charged crime. *See State v. Akers*, 119 N.H. 161, 162–63, 400 A.2d 38, 39 (1979) (defendant parents not guilty of violating a statute making them responsible for their children's illegal use of snowmobiles because they did not commit a voluntary act); *State v. Adelson*, 118 N.H. 484, 487, 389 A.2d 1382, 1384 (1978) (company president not guilty of violating statute requiring him to make unemployment compensation contributions because company lacked funds to make payments at the time the payments became due); *Plummer*, 117 N.H. at 328, 374 A.2d at 436 (only when a defendant claims that his alcoholism constitutes a mental disease or insanity which renders him incapable of exercising his volition will he be permitted to present evidence of his condition under RSA 626:1, I).

In this case, the defendant chose to violate the law. After all, a person who commits a crime under duress "makes a choice" to violate the law, even though that choice is compelled. *See* MODEL PENAL CODE AND COMMENTARIES, *supra* § 2.09, at 372–74;

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2564 (unabridged ed. 1961) (defining "voluntary" as "proceeding from the will [or] produced in or by an act of choice"). Therefore, even if we accepted the defendant's claim that she acted under duress, we would still conclude that she committed a voluntary act when she drove away from her apartment. Under our case law, that choice put her beyond the scope of RSA 626:1, I.

Accordingly, we hold that the trial court did not err in refusing to allow the defendant to present a duress defense based on RSA 626:1, I.

## II. Common Law Duress

Having rejected the defendant's argument that the duress defense is codified in RSA 626:1, I, we now consider whether the duress defense is available to her under our common law.

Although we have not yet recognized the common law duress defense, it is widely accepted that duress is an affirmative defense under the common law. *See United States v. Bailey*, 444 U.S. 394, 415 (1980). It excuses a defendant from criminal liability despite the fact that he has committed each element of a crime, thereby overriding the elements of his offense. *See State v. Soucy*, 139 N.H. 349, 352, 653 A.2d 561, 564 (1995) ("A pure defense is a denial of an element of the offense, while an affirmative defense is a defense overriding the element[s].").

In New Hampshire, the burden is on the defendant to prove each element of an affirmative defense on a balance of the probabilities. *Id.* at 353, 653 A.2d at 564. When no reasonable juror could find that the defendant has met that burden, a trial court may withhold the defense from the jury. *Id.* at 352, 653 A.2d at 564; *see also Bailey*, 444 U.S. at 416. Based on the evidence presented in the State's case and the defendant's offer of proof, we conclude that no reasonable juror could have found that the defendant satisfied her burden of proving duress in this case. Accordingly, even assuming that duress is a common law affirmative defense in New Hampshire, the trial court properly prevented her from presenting evidence of duress.

At common law, "[d]uress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law." *Bailey*, 444 U.S. at 409. Although jurisdictions define the specific elements of the defense differently, the United States Supreme Court has recognized that, regardless of the definition of the duress defense, "one principle remains constant: if there [is] a reasonable, legal alternative to violating the law, a chance both to refuse to do the

criminal act and also to avoid the threatened harm, the defense[] will fail." *Id.* at 410 (quotation omitted).

■ The State's evidence in this case demonstrated that the defendant had lawful alternatives to driving while intoxicated. For example, on cross-examination the defendant admitted that her telephone was working when she returned from the party. Therefore, she could have called a friend or a taxi and requested a ride away from her apartment. Moreover, Hilane testified that the defendant was friendly with almost all of her neighbors. Accordingly, before she drove away from her apartment, the defendant could have walked to a neighbor's apartment to seek shelter or call the police. Hilane never forced her to leave by car; nor did he prevent her from walking away.

■ The defendant's offer of proof did nothing to contradict that evidence. Instead, the defendant merely told the court that she would present evidence of battered woman's syndrome and evidence of prior abuse to show that the defendant was "in fear" when she left the apartment area in her car. She mentioned no evidence which could overcome the State's proof that she had lawful alternatives to violating the law. *See id.; cf. State v. O'Brien,* 132 N.H. 587, 591, 567 A.2d 582, 584 (1989) (defendant not entitled to competing harms defense because he had legal alternatives to driving an injured co-worker to the hospital while he was an habitual offender); *State v. Fee,* 126 N.H. 78, 80–81, 489 A.2d 606, 608 (1985) (defendant not entitled to competing harms defense because he had legal alternatives to driving to his pharmacy under the influence of alcohol to investigate a burglar alarm). As a result, we hold that the defendant could not have met her burden of proving duress in this case. The trial court properly precluded the jury from hearing her evidence on duress.

The defendant's other arguments are contingent upon a finding that the duress defense is available upon the facts in this case. In light of our contrary ruling, we do not consider them.

We agree with the State and the defendant that the trial court erred in denying the defendant's motion for pretrial incarceration credit. Accordingly, we remand the case to the trial court and order that the defendant's pretrial incarceration time be credited to her sentence.

*Conviction affirmed; remanded for resentencing.*

BRODERICK, J., did not sit; the others concurred.