The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Manuela S. GARCIA, Defendant–
Appellant.

No. 97CA1772.

Colorado Court of Appeals,
Div. III.

July 8, 1999.

As Modified on Denial
of Rehearing Sept. 2, 1999.

Certiorari Granted May 22, 2000.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Matthew S. Holman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Ann M. Roan, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Manuela S. Garcia, appeals the judgment of conviction entered on jury verdicts finding her guilty of second degree murder and crime of violence. We reverse and remand for a new trial.

On July 25, 1996, defendant killed her husband with an axe. Defendant testified that this occurred after he attempted to sexually assault her. She also testified that he had verbally, physically, and sexually assaulted her frequently during their marriage.

## I.

■ Defendant contends the trial court's instructions to the jury incorrectly characterized second degree murder in response to provocation as a lesser-included offense of first and second degree murder. She contends the court incorrectly instructed the jury that it was the prosecution's burden to prove each element of heat of passion beyond a reasonable doubt. That erroneous instruction, she contends, especially when considered in conjunction with misleading comments made by the prosecutor during closing arguments, impermissibly lessened the prosecution's burden of proof because its wording did not require the prosecution to prove a *lack* of provocation beyond a reasonable doubt. We agree.

■ Defendant did not object at trial to the jury instructions concerning which she now complains. Hence, our task is to ascertain whether such error amounted to plain error; that is, whether it substantially affected a fundamental right of the defendant and casts serious doubt upon the fairness of the trial proceedings and the validity of the conviction. *Thomas v. People,* 820 P.2d 656 (Colo.1991).

■ To prevail on a claim of instructional plain error, the defendant must demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to the conviction. *See Bogdanov v. People,* 941 P.2d 247 (Colo.1997).

### A.

■ Defendant's contention requires analysis of § 18-3-103, C.R.S.1998. In pursuing that analysis, we must identify and give effect to the intent of the General Assembly, and to determine such intent, we look first to the statutory language. *People v. Terry,* 791 P.2d 374 (Colo.1990).

Section § 18-3-103, C.R.S.1998, defining second degree murder, was amended effective July 1, 1996, to include § 18-3-103(3)(b), C.R.S.1998. That subsection provides that second degree murder, ordinarily a class two felony, is reduced to a class three felony if the act causing the death was performed upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the defendant sufficiently to excite an irresistible passion in a reasonable person.

The statute was amended in response to concerns about confusing jury instructions dealing with second degree murder and heat of passion manslaughter that had left jurors uncertain as to whether they must first decide that a defendant was not guilty of second degree murder before determining whether heat of passion manslaughter had been proven. *See generally People v. Wadley,* 890 P.2d 151 (Colo.App.1994); *People v. Seigler,* 832 P.2d 980 (Colo.App.1991). Basically, the amendment was intended to parallel the treatment of heat of passion in the first degree assault statute. *See* Hearings on H.B. 1087 before the House Judiciary Committee, 60th General Assembly, Second Regular Session (February 16, 1996).

Before the amendment, heat of passion manslaughter was a separate crime under § 18-3-104, C.R.S.1998, and was classified as a class three felony. *See* Colo. Sess. Laws 1993, ch. 322 at 1896. The change in the statutory scheme creates one single crime of second degree murder with two different felony levels, depending upon whether the facts in a particular case demonstrate the existence of heat of passion. Essentially, the General Assembly eliminated the offense of heat of passion manslaughter and amended § 18-3-103 to make provocation a factor in mitigation of second degree murder. *See* § 18-3-103(3)(b), C.R.S.1998; *Walker v. People,* 932 P.2d 303 (Colo.1997) (in dictum in fn. 5, provocation identified as factor in mitigation of second degree murder under amended statute).

This analysis is confirmed by a review of *Rowe v. People,* 856 P.2d 486 (Colo.1993), in which the first degree assault statute, containing provocation language virtually identical to the statute involved here, was at issue.

In *Rowe,* the supreme court concluded that provocation constituted a statutory mitigating factor that would reduce a defendant's sentence for first degree assault, and that provocation did not constitute a separate of-

fense. The court noted that the elements of provocation were contained in the subsection that dealt exclusively with sentencing, rather than in the subsection describing the elements of the offense. *See* § 18–3–202, C.R.S.1998.

Based on that interpretation, the *Rowe* court determined the trial court had erred by instructing the jury that first degree assault committed under provocation was a lesser-included offense of first degree assault. The court found that the jury, in effect, was instructed on, and convicted the defendant of, an offense that did not exist.

■ Similarly, here, § 18–3–103 sets forth the elements of provocation in the subsection that deals exclusively with sentencing, rather than in the subsection describing the elements of the offense. Consequently, we conclude that, as in the statute at issue in *Rowe*, provocation is a statutory mitigating factor that will, if proven, reduce a defendant's sentence for second degree murder, but it is not an element of a separate offense. *See Rowe v. People, supra.*

Here, after instructing the jury on the charged offenses of first degree murder and violent crime, the trial court gave a collective instruction on the elements of the "lesser offenses" of second degree murder and "second degree murder-provocation."

The instruction listed the elements of each of those two "lesser offenses" as separate offenses and stated that the two lesser offenses were "necessarily included" in the offense of first degree murder. The instruction also stated that the burden of proof was upon the prosecution to prove beyond a reasonable doubt the facts necessary to establish heat of passion. Finally, the instruction stated that the jury could not find defendant guilty of more than one of the offenses, first degree murder, second degree murder, or second degree murder-provocation. The verdict form paralleled these instructions.

We agree with defendant that the instructions inaccurately characterized second degree murder-provocation as a lesser-included offense of first degree murder under this new statutory scheme. Thus, the jury was incorrectly instructed that, before it could

return a verdict of second degree murder-provocation, the prosecution was required to *prove* the elements of provocation beyond a reasonable doubt. Instead, the jury should have been instructed that the prosecution had to prove a *lack* of provocation beyond a reasonable doubt.

Hence, the jury was not required to make a finding with regard to heat of passion and was affirmatively told it could not convict defendant of second degree murder-provocation unless the prosecution had proved beyond a reasonable doubt the facts necessary to establish heat of passion. Moreover, as instructed, the jury was not required to make any finding on the issue of provocation before returning a guilty verdict of second degree murder.

In *Rowe v. People, supra*, the court ruled the jury should have been instructed in accord with *COLJI–Crim.* No. 10:20 (1983) which provides:

If you find the defendant not guilty of [Count No. ____], [First] [Second] Degree Assault, you need not consider this instruction. If, however, you find the defendant guilty of [Count No. ____] [First] [Second] Degree Assault, you must then consider the issue of provocation.

The evidence in this case has raised the issue of provocation. Provocation means that the defendant's acts were performed, not after deliberation, but upon a sudden heat of passion caused by a serious and highly provoking act of the intended victim which affected the defendant sufficiently to excite such an irresistible passion in a reasonable person.

It is the burden of the prosecution to prove beyond a reasonable doubt a lack of provocation for the defendant's acts. You should indicate on the provided verdict form whether or not you find that the prosecution has proven a lack of provocation beyond a reasonable doubt.

An analogous instruction pertaining to murder should have been given here.

### B.

The People concede that the second degree murder statute is structured like the statute

at issue in *Rowe.* However, they argue that here, unlike in *Rowe,* the jury was instructed that second degree murder and second degree murder-provocation were each lesser-included offenses of first degree murder. The People assert that, because the instruction did not treat second degree murder-provocation as a lesser-included offense of second degree murder, it was not erroneous. We disagree.

■ Given our determination that second degree murder-provocation is *not* a separate offense, it is not a lesser offense of *either* first or second degree murder. *See Rowe v. People, supra.*

■ Relying upon *Walker v. People, supra,* the People further assert that *Rowe* did not address the issue of how the burden to prove provocation was to be allocated. Thus, the People argue that, because second degree murder-provocation is rooted in manslaughter in which provocation must be proven by the prosecution, placing the burden of proof upon the prosecution to prove provocation here is not improper. The People assert that, simply because provocation has been restructured as a mitigating factor for second degree murder, this change should not mandate that the burden of proof has shifted. Again, we disagree.

Contrary to the People's contention, the allocation of the burden of proof for provocation was addressed in *Rowe* through the express language of the pattern instruction now contained in *COLJI–Crim.* No. 10:20 itself, which, as quoted above, explicitly allocates to the prosecution the burden to prove "lack of provocation."

Furthermore, the People's reliance upon *Walker v. People, supra,* is misplaced. *Walker* involved the heat of passion manslaughter statute, as in effect before the 1996 amendments, which defined heat of passion manslaughter as a separate offense for which the prosecution must prove each essential element. Accordingly, *Walker's* burden of proof analysis is not applicable here.

### C.

We reject the People's additional contention that defendant requested the specific language of the instruction, and thus, any error was invited.

■ The doctrine of invited error provides that a party may not complain on appeal of an error that has been invited or injected into the case, for a party must abide the consequences of his or her acts. *People v. McCoy,* 944 P.2d 584 (Colo.App.1996).

■ Here, however, there is simply no evidence that defendant either tendered or requested the particular instruction about which she now complains. Rather, she simply failed to object to it at trial.

### D.

■ Here, the subject of the instructional error, *i.e.,* whether defendant was acting with provocation when she killed her husband, was hotly contested at trial. Moreover, the evidence of defendant's guilt of second degree murder, as opposed to second degree murder-provocation, is far from overwhelming. And, there is a reasonable possibility that the instructional error contributed to defendant's conviction. *See Bogdanov v. People, supra.*

Hence, we conclude that the instruction given undermined the fundamental fairness of the trial so as to cast serious doubt on the reliability of the judgment of conviction and therefore constitutes plain error. Accordingly, reversal and a new trial are required. Such conclusion obviates any need to address defendant's contention that the error was structural.

### E.

■ In light of this disposition, the prosecutor's comment during closing argument that, if the jury found defendant guilty of second degree murder, it should not consider provocation, was an incorrect statement of the law. Hence, it should not be repeated on retrial.

■ Also, under a similar evidentiary posture on retrial, defendant is entitled to an appropriate instruction on provocation that embodies both the objective and subjective factors contained within the heat of passion

statute. *See People v. Dooley*, 944 P.2d 590 (Colo.App.1997).

## II.

Because it is likely to arise upon retrial, we next address defendant's contention that the trial court erred in refusing to instruct the jury that she had no duty to retreat before exercising her right to self-defense. Under the evidence presented, we agree that she was entitled to an appropriate instruction on the doctrine of no-retreat.

An innocent victim of an assault need not retreat before using deadly force if the victim believes the use of such force is necessary for self-protection and the belief is based on reasonable grounds. *See Idrogo v. People*, 818 P.2d 752 (Colo.1991); § 18–1–704(2), C.R.S.1998.

When, as here, the record contains any evidence tending to establish self-defense, a defendant is entitled to have the jury properly instructed with respect to that defense. Although an instruction couched in terms of the language of the statute is generally proper, a trial court must tailor instructions to the particular circumstances of a given case so that the jury is adequately advised of the law pertaining to defendant's claim of self-defense. *See Idrogo v. People, supra.*

Here, the trial court gave the jury a self-defense instruction that was similar to *COLJI–Crim.* No. 7:17 (1983). However, the trial court refused defendant's tendered instruction that she had no duty to retreat before exercising her right to self-defense. The court concluded that, because the evidence did not raise the issue of retreat, such an instruction was not appropriate.

However, the record does not support that conclusion. First, there is sufficient evidence that, before defendant used deadly force, she had reasonable grounds to believe that the use of force was necessary for self-protection. For example, defendant testified that, shortly before she killed her husband, he had attempted to sexually assault her and had threatened to kill her. She testified that she had initially fought him off by hitting and biting his chest and by pushing him back with her foot.

She testified that she was scared and was shaking and crying, and that after she had pushed him away, she "jumped up ... lunged over to the dresser and got the axe," and then told him to get out of her house. According to defendant, her husband then gave her "a look like he used to give me in Missouri and Kansas when I messed up, and I was going to get hurt pretty bad, and ... I just snapped."

On cross-examination, the prosecution elicited evidence that defendant had other choices besides killing her husband, implying that she could have retreated rather than kill him. For example, the prosecution asked defendant, "What you're telling this jury is that you had choices or options that night ... you could have gone to another safe house or woman's center that night instead of killing your husband, couldn't you have?" Defendant answered, "I don't know because I snapped, I could have done many things, but maybe differently, and if I could, I would."

Later, the prosecutor queried defendant whether "at the time that you killed your husband, you knew about the woman's shelter because you had been to one?" Defendant answered, "Yes, I was in one in Missouri." The prosecutor also asked if she knew "that [she] could have called the police, that it was an option that [she] could have done?" Defendant answered, "Probably." The prosecutor also asked her about other options, including that she could have "gone to a hotel," or "to [friends]," or "for a long run." In final response, defendant said, "I could have done a lot of things and I wish I would have done it."

Finally, the prosecutor argued at closing that defendant had many other choices besides using force upon her husband, some of which included withdrawal from the situation.

Based on this record, we conclude that the issue of retreat was raised, placed in issue, and argued. Therefore, defendant was entitled to an appropriate instruction on the doctrine of no-retreat, and the failure to give such an instruction would, by itself, constitute reversible error. Hence, under a simi-

lar evidentiary posture on retrial, such an instruction should be submitted to the jury. *See Idrogo v. People, supra.*

### III.

■ Another likely issue on retrial arises from defendant's contention that she was deprived of her right to assert a valid defense when the trial court declined to instruct the jury that one may justifiably use deadly force to prevent a sexual assault. Under the evidence presented, we agree that she was entitled to such an instruction.

■ If there is credible evidence supporting an affirmative defense, the court must instruct the jury on the defense even if the supporting evidence consists of highly improbable testimony by the defendant. *Lybarger v. People*, 807 P.2d 570 (Colo.1991).

Section 18–1–704(2), C.R.S.1998, defines the affirmative defense of self-defense, in pertinent part, as follows:

Deadly physical force may be used only if a person reasonably believes a lesser degree of force is inadequate and:

(a) The actor has reasonable grounds to believe, and does believe, that he or another person is in imminent danger of being killed or of receiving great bodily injury; *or*

. . . .

(c) The other person is committing or reasonably appears about to commit . . . *sexual assault* . . . .

(emphasis added)

■ The statute, phrased in the disjunctive, plainly applies when the actor reasonably perceives that the aggressor appears about to commit a sexual assault upon her and reasonably believes that a degree of force less than deadly physical force is inadequate. Contrary to the People's contention, the statute does not limit the actor's right to use deadly force to those situations in which the aggressor is committing or reasonably appears about to commit a sexual assault upon someone *other* than the actor.

Here, the trial court gave the jury a self-defense instruction that was similar, in part,

to *COLJI–Crim.* No. 7:17 (1983). As pertinent here, the instruction provided that it was an affirmative defense that defendant used deadly physical force if "she had reasonable grounds to believe, and did believe, that she or another person was in imminent danger of being killed or of receiving great bodily injury." The instruction, however, did not inform the jury of defendant's right to use deadly force if a sexual assault on her reasonably appeared to be imminent.

The trial court refused defendant's tendered instruction, which provided that "[j]ustifiable homicide is the killing of a human being in necessary self-defense against a person who endeavors by violence or surprise to commit a known felony, such as rape." In refusing that instruction, the trial court found that the other instructions adequately addressed the issue of self-defense, and that defendant's instruction either did not comply with the law or was duplicative.

However, defendant's tendered instruction in large part did state the law. *See* § 18–1–704(2)(c), C.R.S.1998; *People v. Miller*, 981 P.2d 654 (Colo.App.1998).

Furthermore, the record reveals that none of the instructions given informed the jury concerning defendant's right of self-defense when a sexual assault reasonably appeared to be imminent. The instruction that "the existence of a marital relationship does not justify a husband committing a sexual assault against his spouse" did not do so. Therefore, defendant's tendered instruction would not have been duplicative.

Furthermore, there was evidence in the record tending to establish that defendant had used deadly force to prevent her husband from sexually assaulting her.

For example, defendant testified that her husband had sexually assaulted her many times during the course of their marriage, including during times they had lived in both Missouri and Kansas. She testified that shortly before she killed him, he had once again attempted forcible anal intercourse. She testified that, after she initially fought off that attempted sexual assault, she interpreted his facial expression as indicating that

she was going to be "hurt pretty bad," which caused her to strike him.

Under these circumstances, defendant was entitled to an appropriate instruction on her right to use deadly force to prevent her husband from sexually assaulting her. *See People v. Janes,* 982 P.2d 300 (Colo. 1999) (when evidence in the record supports the theory of self-defense, including the justification for deadly physical force when another person is committing or reasonably appears about to commit first or second degree assault, an instruction using the additional language of the statute should be given); *Lybarger v. People, supra.* This error, by itself, would require reversal, and, under a similar evidentiary posture on retrial, such an instruction should be submitted to the jury.

## IV.

As guidance on retrial, we also address, and reject, defendant's contention that the trial court erred by refusing to give the jury other amplifying self-defense instructions.

Defendant tendered several self-defense instructions asserting that her actions were to be measured by the conduct of a reasonable person in her position at that time. The court refused the instructions and instructed the jury as follows:

> It is an affirmative defense to the crimes of First Degree Murder, Second Degree Murder, and Second Degree Murder–Provoked Passon [sic] that the defendant used deadly physical force if:
>
> 1. She reasonably believed a lesser degree of force was inadequate, and
>
> 2. She had reasonable grounds to believe, and did believe, that she or another person was in imminent danger of being killed or of receiving great bodily injury.

■ Defendant argues that this instruction was incomplete and did not explain to the jury that evidence of battered woman's syndrome could be used to gauge the reasonableness of her beliefs as they related to self-defense, nor did it explain that she had the right to act on appearances.

However, the instruction tracked the text of both the pattern self-defense jury instruction and the self-defense statute. It informed the jury that it was to consider whether defendant "reasonably believed a lesser degree of force was inadequate," and whether "she had reasonable grounds to believe, and did believe, that she or another person was in imminent danger of being killed or of receiving great bodily injury."

■ An instruction in the language of the statute is generally considered to be sufficient. Further, it is unnecessary to give an instruction that is encompassed in other instructions given by the court. *See Beckett v. People,* 800 P.2d 74 (Colo.1990); *People v. Gallegos,* 950 P.2d 629 (Colo.App.1997).

The supreme court has held that the instruction given here adequately advises the jury that it is to consider the totality of the circumstances in evaluating the reasonableness of defendant's actions, and it permits the jury to consider whether, from the defendant's viewpoint, he or she was justified in using force in self-defense. *See Beckett v. People, supra.*

Defendant's theory of the case instruction also explicitly informed the jury that her husband's "repeated battering of [her], and his threats to kill her, and the sexual assaults reasonably caused her to act in self-defense," and that she "was a battered woman, and that she used deadly force while suffering from the Battered Woman's Syndrome, and thus reasonably believed she was acting in self-defense or the defense of others."

The trial court rejected such instruction, but gave an instruction stating:

> The evidence in this case has raised an issue concerning the Battered Woman's Syndrome. The Battered Woman Syndrome is not in and of itself a defense to a crime. However, if you find that the defendant did suffer from the syndrome, that is evidence which you can use in deciding the issues relating to the affirmative defense [of self-defense].

Thus, the trial court's instructions adequately apprised the jury of this aspect of the law of self-defense. Therefore, the court did not err in rejecting these tendered additional instructions. *See Beckett v. People, supra; People v. Gallegos, supra; People v. Saiz,* 923 P.2d 197 (Colo.App.1995) (self-defense instruction was not incomplete because it did not indicate whether the jury was to apply a subjective or objective standard in determining reasonableness).

As to defendant's contention that, during voir dire, the prosecutor misstated the standard to be applied in assessing self-defense, we agree that self-defense embodies both subjective and objective concepts. Hence, if the prosecution seeks to pursue the same line of questioning on retrial, the trial court should require adequate differentiation.

### V.

Finally, we also address, and reject, defendant's contention that the trial court erred in failing to instruct the jury on reckless manslaughter.

■ The jury may not be instructed on a lesser offense unless there is a rational basis for it to acquit on the original charge and convict on the lesser. *People v. Vasallo–Hernandez,* 939 P.2d 440 (Colo.App.1995).

■ A person commits reckless manslaughter if he or she recklessly causes the death of another person. Section 18–3–104(1)(a), C.R.S.1998. A person acts recklessly when he or she consciously disregards a substantial and unjustifiable risk that a result will occur. *See People v. McCoy, supra.*

■ In the commission of reckless manslaughter, the actor causes death by acting in a manner that involves a substantial and unjustifiable risk of death of the victim, and although the actor is conscious of the risk, he or she nevertheless chooses to engage in the action. *Moore v. People,* 925 P.2d 264 (Colo. 1996).

■ Here, defendant testified that when she picked up the axe, she did not intend to kill her husband. Rather, she testified that she told him "to get out of my house," and that she "wanted him gone." She testified that she had "wanted to scare him," but that she "just snapped." She testified that she then hit him with the axe, and that the next thing she remembered was her daughter sitting on the end of the bed saying she was hungry. She testified that she did not realize what she had done until she was cooking breakfast for her daughter.

Under this state of the record, there was no evidence that, when defendant hit her husband with the axe, she was conscious of the risk of death, but nevertheless chose to engage in the action. Thus, there was no evidence to support a verdict on reckless manslaughter, and the trial court did not err in refusing to instruct the jury on that offense. *See People v. Vasallo–Hernandez, supra.* Accordingly, under a similar evidentiary posture on retrial, such an instruction would also be improper.

Defendant's contention that the trial court erred by declining further to define "knowingly" as contained in the instructions is unlikely to arise again upon retrial. Hence, we decline to address it. Moreover, in view of our disposition, we need not address defendant's cumulative and aggregate error contention.

The judgment is reversed, and the cause is remanded for a new trial consistent with the views expressed in this opinion.

Judge MARQUEZ and Judge TURSI *, concur.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. Art. VI, sec. 5(3), and § 24–51–1105, C.R.S.1998.

* Justice MARTINEZ and Justice BENDER would grant the petition as to the following issue: