Chakkira WONNUM, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 592, 2006.

Supreme Court of Delaware.

Submitted: Sept. 19, 2007.
Decided: Dec. 26, 2007.

Nicole M. Walker, Office of the Public Defender, Wilmington, Delaware for appellant.

Elizabeth R. McFarlan, Department of Justice, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the court en banc.

STEELE, Chief Justice for the Majority.

Defendant–Appellant Chakkira Wonnum appeals her Superior Court convictions of Murder First Degree, Possession of a Firearm During the Commission of a Felony, Assault First Degree, Robbery First Degree, Conspiracy Second Degree, and Possession of a Deadly Weapon by a Person Prohibited. Wonnum presents three arguments on appeal. First, she argues that the trial judge erroneously precluded expert testimony about her psychological disposition. Second, she contends that the trial judge erred by refusing to give a duress instruction. Finally, Wonnum argues that the trial judge violated her constitutional right to a trial by jury when the trial judge interjected her own recollection of a fact to the jury.

We hold the trial judge did abuse her discretion by precluding expert testimony on Wonnum's psychological disposition. We also hold that the trial judge erred by refusing to give a duress instruction to the jury. By recounting her own recollection of Wonnum's age to the jury, the trial judge also erred, but we find the error harmless.

Accordingly, we reverse Wonnum's convictions and remand to Superior Court for further proceedings in accordance with this opinion.

### FACTS

In February 2005, 17 year old Chakkira Wonnum ran away from home to live with her 23 year old boyfriend, Steve Martin. During the course of their relationship, Martin abused Wonnum, who frequently had noticeable bruises and black eyes.

On May 18, 2005, Martin gave Wonnum a loaded revolver, placed it in her purse, and told her to rob somebody because he needed money. She called a former boy-

friend, Johnnie Jackson, and asked him to meet her. Jackson was a drug dealer and Wonnum believed that he would have money. Around 9:00 p.m., Jackson called Annette Boyd and asked her to drive him to meet Wonnum. Boyd agreed. She placed her four-year old son in his car seat in the back of her vehicle and drove two blocks to pick up Jackson. Boyd then drove Jackson to Wilmington to meet Wonnum.

When Boyd and Jackson arrived, Wonnum got into the rear passenger side of the vehicle, directly behind Jackson. Following a 15 minute stop at a house on 6th Street for drugs, the group headed back on I–95 in the direction of Jackson's house. As Boyd got off the Route 141 exit, Wonnum drew the revolver, aimed it at the back of Jackson's head and told him to give her his money. After a brief struggle, Wonnum shot Jackson four times in the back of his head and neck, causing fatal injuries. Wonnum also shot Boyd in the arm during the altercation. Wonnum fired all nine rounds in the gun's magazine.

After the shooting, Wonnum told Boyd to drive back to Wilmington and directed her to pull into a back alley off Maryland Avenue. Boyd grabbed her son and fled on foot down Maryland Avenue. Boyd then flagged down an elderly couple, told them what happened, and used their phone to call 911. Boyd suffered permanent nerve damage to her arm as a result of her injuries.

Wonnum took Jackson's money ($50.00) and cell phone from his pockets and fled in the opposite direction on Maryland Avenue. She called Martin's house, and Martin's mother, Joann Parrish, answered the phone. After Wonnum told Parrish that she had shot someone, Parrish told her to get rid of the gun. Wonnum disposed of the revolver in some bushes in front of a house on Maryland Avenue and then hitched a ride back to Martin's house.

Martin directed Wonnum to change her clothes. They and Martin's friend "Bump" then fled to New Jersey, where Martin and Bump burned Wonnum's blood-covered clothes. After several days, Wonnum returned to her mother's house in Wilmington. Police arrested Wonnum, and the State indicted her on charges of intentional murder, felony murder, assault first degree, two counts of robbery first degree, conspiracy second degree, and related weapons offenses.

On June 20, 2006, the State moved *in limine* to exclude from evidence a psychological report on Wonnum and to bar the presentation of a duress defense. The trial judge granted the motion to exclude the expert report and reserved decision on the duress defense. On July 10, 2006, the State *nolle prossed* one count of robbery first degree and one count of possession of a deadly weapon by a person prohibited.

On July 11, 2006, Wonnum went to trial. At the prayer conference, the trial judge denied Wonnum's request for a duress instruction. The jury hung on the charge of intentional murder and the accompanying weapons offense, but found Wonnum guilty of the remaining offenses. Post trial, Wonnum requested that the trial judge sentence her as guilty but mentally ill. The trial judge denied the motion, and on October 27, 2006, sentenced Wonnum to life plus seventeen years in prison.

## *DISCUSSION*

### I. *Expert Testimony*

█ Wonnum first argues that the trial judge erred when she precluded expert testimony regarding her psychological state. On March 28, 2006, defense counsel sent a copy of a report from a 2005 psychological examination of Wonnum to the state prosecutors. The report contained an explanation of Wonnum's his-

tory of abuse and an evaluation of Martin's abusive relationship with her. It detailed sexual abuse at a very young age, and diagnosed Wonnum with bi-polar disorder, depression, and post-traumatic stress disorder. Anticipating that Wonnum would attempt to admit the report at trial in support of a duress defense, the State moved *in limine* to exclude the evaluation. The State argued, in support of its motion, that the report was irrelevant because "Wonnum's life of abuse and drugs does not make Johnnie Jackson's killing or the shooting of Annette Boyd more or less probable … [and] any probative value [the] report may bring is highly outweighed by the confusion it will create in the jury's mind especially in the absence of an insanity defense." During an office conference with the trial judge, defense counsel requested the opportunity to respond to the State's motion in writing. Although the trial judge never read the report to which the State objected, she found the report irrelevant to a duress defense and granted the State's motion. We review the exclusion of evidence for abuse of discretion.[1]

■ Duress is a recognized affirmative defense to criminal liability in situations where a third party coerces the defendant by threat of bodily harm to commit a crime.[2] The defendant must establish duress by a preponderance of the evidence.[3] Duress is defined in the Delaware Code as:

(a) In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the conduct charged to constitute the offense because the defendant was coerced to do so by the use of, or a threat to use, force against the defendant's person or the person of another, which a reasonable person in the defendant's situation would have been unable to resist.

(b) The defense provided by subsection (a) of this section is unavailable if the defendant intentionally or recklessly placed himself or herself in a situation in which it was probable that the defendant would be subjected to duress.

(c) It is not a defense that a woman acted on the command of her husband, unless she acted under such coercion as would establish a defense under this section. The presumption that a woman acting in the presence of her husband is coerced is abolished.[4]

In evaluating a duress defense, a jury may consider the immediacy of the threat; the explicitness of the threat; the nature of the physical injury threatened; the time when the threat is to be carried out; the ability to escape from the coercer; and the coercer's presence, or absence at the time of the commission of the crime.[5] The rationale underlying duress as an affirmative defense is that "a man should not be held criminally responsible for a crime when commanded to do it under circumstances in which a reasonable person would have been unable to resist the compulsion to do it."[6] The trier of fact evaluates the factual circumstances relating to the force or threat of force objectively using a reasonable person standard.[7] The statute re-

---

1. *Capano v. State,* 781 A.2d 556, 586 (Del. 2001).

2. *Feliciano v. State,* 332 A.2d 148, 149 (Del. 1975).

3. 11 *Del. C.* § 304(a); *Foraker v. State,* 394 A.2d 208, 214 (Del.1978).

4. 11 *Del. C.* § 431.

5. 11 *Del. C. Ann.* § 431.

6. Delaware Criminal Code Commentary § 431, at 94 (1973).

7. *Id.*

quires the defendant to prove by a preponderance of the evidence that a reasonable person would have been unable to resist the force or threat of force made.

We find that the trial judge erred by excluding the psychological report, both as a matter of process and substance. As the State conceded at oral argument, the trial judge never read the report before excluding it. She limited her consideration of the report to counsels' oral representations at an office conference. A ruling on the admissibility of a report into evidence without an understanding of the report's actual contents or detailed written proffers on its content, is an abuse of discretion.

In her ruling on the motion *in limine,* the trial judge remarked that "[Wonnum's] psychological status or whatever background she's has [sic] in terms of her family background or whatever hard life she's had is totally and completely irrelevant in the guilt phase." The trial judge's conclusory assumption ignored the fact that the report contained more than a psychological diagnosis; it also contained an opinion on why Wonnum would legitimately perceive (or by inference any reasonable person similarly situated) Martin to be a threat. Expert testimony is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue[.]"[8] Consistent with the second section of the duress statute, § 431(b), the report offered a relevant explanation that Wonnum did not "intentionally or recklessly place ... herself" in the situation, and addressed why Wonnum did not believe she could just simply ignore Martin's demand. Therefore the trial judge should not have excluded the report solely because of a conclusory determination that "[Wonnum's] psychological status or ... background" had no relevance to a duress defense.

## II. *Duress Jury Instruction*

■ Wonnum next contends that the trial judge improperly denied her request for a duress instruction. The trial judge found that Wonnum failed to demonstrate that Martin had actually threatened her and thus would not give her requested duress instruction. We review the Superior Court's denial of a requested instruction *de novo.*[9]

To establish the affirmative defense of duress, the defendant must show by a preponderance of the evidence that she was coerced to engage in the conduct charged by the use of, or a threat to use, force against her person or the person of another.[10] Under 11 *Del. C.* § 304(b), "Unless the court determines that no reasonable juror could find an affirmative defense established by a preponderance of the evidence presented by the defendant, the defendant is entitled to a jury instruction that the jury must acquit the defendant if they find the affirmative defense established by a preponderance of the evidence." The affirmative defense is established by a preponderance of the evidence only if it is more likely than not that each element of the defense existed at the required time.[11]

■ In addition, for a duress instruction to be given, the trial judge must be "satisfied that some credible evidence supporting the defense has been presented."[12] Credible can be defined as capable of be-

8. D.R.E. 702.

9. *Smith v. State,* 913 A.2d 1197, 1210 (Del. 2006).

10. 11 *Del. C.* § 304(a); 11 *Del. C.* § 431.

11. 11 *Del. C.* § 304(c).

12. 11 *Del. C.* § 303(a).

ing believed. In *Gutierrez v. State*, in discussing the affirmative defense of self-defense, we held that the judge, in her role as gatekeeper, ensures "(1) that the affirmative defense evidence describes a situation that is within the realm of possibility, and (2) that such situation would legally satisfy the requirements of [the asserted affirmative defense.]"[13] We went on in *Gutierrez* to cite with approval the proposition that, "If there is credible evidence supporting an affirmative defense, the court must instruct the jury on the defense even if the supporting evidence consists of highly improbable testimony by the defendant."[14] Thus, as in *Gutierrez*, when the defendant presents some evidence capable of being believed, on each of the elements of an affirmative defense, whether the defendant has proved the affirmative defense by a preponderance of the evidence is a jury question.

▮ We believe that the defendant's testimony supported a jury instruction for duress. The defendant's testimony is for the jury to believe or reject. Wonnum's testimony, as well as the excluded psychological report, provides *some credible evidence* to support a duress instruction. As the Fifth Circuit wrote in *United States v. Willis*, "In determining whether the elements of duress are met, the fact-finder may take into account the objective situation in which the defendant was allegedly subjected to duress. In addition to the immediate circumstances of the crime, this would include evidence concerning the defendant's past history with the person

making the unlawful threat."[15] Wonnum testified that when she disobeyed Martin, he would curse, yell, and hit her. On an earlier occasion, when he wanted her to commit a robbery and she would not, he beat her. On May 18, 2005, Martin told her to "rob someone," he put the loaded gun in her purse, and directed her to call someone. Wonnum testified at trial she "wanted to get [the robbery] done so Martin can leave me alone." She also testified that she was afraid Martin or one of his friends would hurt her family if she did not follow his orders.

The trial judge's factual findings prevented Wonnum from presenting a viable duress defense. After finding that Martin made no specific or immediate threat to Wonnum, that he was absent at the time of the shootings, and that Wonnum had the opportunity to "escape" and after excluding the expert report without having read it or considered any of its implications, barring a duress defense and refusing to instruct the jury accordingly, became a self-fulfilling prophecy. While the record superficially supports those findings (depending on one's view of how specific the threat must be), a "threat" can also mean an implied threat the genuineness of which can be reinforced by earlier conduct. Wonnum's testimony supported, by actual relationship history, an implied, current threat. Based on Wonnum's testimony, it was *within the realm of possibility* that Wonnum was acting under duress when she committed the crime of robbery. The

---

13. 842 A.2d 650, 653 (Del.2004).

14. *Id.* (citing *People v. Garcia,* 1 P.3d 214, 221 (Colo.Ct.App.1999)); *see also Commonwealth of Pennsylvania v. DeMarco,* 570 Pa. 263, 809 A.2d 256, 262 (2002) (holding that once evidence is presented in support of the duress defense, the trial judge must give the jury instruction).

15. 38 F.3d 170 n. 8 (5th Cir.1994) (citing *United States v. Webb,* 747 F.2d 278, 285 (5th Cir.1984)); *see also United States v. Bell,* 855 F.Supp. 239, 241 (N.D.Ill.1994) ("A defendant's state of mind as it relates to whether her fear was reasonable is an objective criterion which may be testified to by defendant and considered by the trier of fact in this regard.").

jury, not the trial judge, should have decided whether Wonnum satisfied her burden of proof to establish that defense by a preponderance of the evidence.

We note that our colleague dissents from this, Part II, of the Opinion. We do not hesitate to point out that in his thoughtful and articulate dissent, he agrees with much of our analysis in Part II though he parts from us by concluding that the trial judge rightfully made a unilateral judgment that a reasonable person would have "found several legal alternatives" to both robbing and killing Jackson and that, therefore, the trial judge correctly found in the first instance as a matter of law, that a reasonable person in Wonnum's situation would have been able to resist Martin's coercive conduct.

We disagree. We do so because evidence both admitted—Wonnum's testimony—and improperly barred—the psychological report—offered "some credible evidence supporting" the duress defense. As we point out in Part III, under the Delaware Constitution, juries, not judges, are fact finders in Delaware jury trials.[16]

Superficially, characterizing the duress defense as "battered woman syndrome" and rejecting it, without even reading or considering the psychological report does not morph the trial judge's rejection of the request for a jury instruction on duress into a ruling as a matter of law. Here, the jury should have weighed Wonnum's ability to pursue legal alternatives and assessed her credibility, that of the report and the application of those facts and opinion if believed, to both elements of the duress defense. It should have been they, and not the trial judge, who answered the questions of whether a reasonable person in Wonnum's situation would have been able to find legal alternatives to robbing and shooting the victim.

Accordingly, we hold that the trial judge committed reversible error when she failed to instruct the jury on the duress defense.

## III. *Trial Judge's Statement to the Jury*

■ Finally, Wonnum argues that the trial judge violated the Delaware Constitution when the trial judge related her own recollection of Wonnum's age to the jury. During deliberations, the jury requested a definition of the term "juvenile." The trial judge properly defined the term as meaning "an individual under the age of 18 years." After giving this definition, however, the trial judge added "[i]n this case the defendant, I think, indicated that she was 17 at the time that this occurred."

---

16. The right to trial by jury in the 1776 Delaware Declaration of Rights and Fundamental Rules of the Delaware State, which was preserved by the "heretofore" text in the 1792 Constitution, referred to the right to trial by jury regarding factual issues as a great security of "the lives, liberties, and estates of the people." Similarly, in a letter to Pierre S. DuPont, Thomas Jefferson described the fact-finding function of jurors as:

[T]he very essence of a Republic.... We of the United States ... think experience has proved it safer for the mass of individuals composing the society to reserve to themselves personally the exercise of all rightful powers to which they are competent....

Hence, with us, the people ... *being competent to judge of the facts occurring in ordinary life, ... have retained the functions of judges of facts under the name of jurors....*

I believe ... that action by the citizens, in person in affairs within their reach and competence, and in all others by representatives chosen immediately and removable by themselves, constitutes the essence of a Republic.

RANDY J. HOLLAND, THE DELAWARE CONSTITUTION: A REFERENCE GUIDE 149–50 (quoting Letter from Thomas Jefferson to Pierre S. DuPont (Apr. 4, 1816), *in* 4 ANNALS OF AMERICA 414 (Encyclopedia Britannica 1976) (emphasis added)).

Because Wonnum failed to object to this statement at trial, we review for plain error.[17] "Plain error exists when the error was 'so clearly prejudicial to [a defendant's] substantial rights as to jeopardize the very fairness and integrity of the trial process.'"[18]

Under the Delaware Constitution, "[j]udges shall not charge juries with respect to matters of fact, but may state the questions of fact in issue and declare the law."[19] Although the trial judge improperly commented on Wonnum's testimony, the comment was harmless error.[20] Wonnum's age was relevant only to the charge of possession of a deadly weapon by a person prohibited.[21] More importantly, her age was never in dispute at trial. Wonnum herself and other witnesses testified that she was 17 and defense counsel referred to Wonnum as a "17 year old" several times during closing arguments. Thus, any error resulting from the comment was inconsequential at best.

### CONCLUSION

For the foregoing reasons, we REVERSE and REMAND to the Superior Court for a new trial.

---

**17.** *Bullock v. State,* 775 A.2d 1043, 1046 (Del. 2001).

**18.** *Id.*

**19.** Del. Const. art. IV, § 19.

**20.** *See Van Arsdall v. State,* 524 A.2d 3, 10–11 (Del.1987) (adopting the U.S. Supreme Court harmless error analysis approach for analyzing harmless error under the Delaware Constitution).

**21.** 11 *Del. C.* § 1448(a)(5) (prohibiting juveniles from possessing handguns).

**22.** *U.S. v. Bailey,* 444 U.S. 394, 410, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (quoting W. La-

RIDGELY, Justice, concurring in part and dissenting in part:

The Delaware Criminal Code requires that the objective standard of a reasonable person be used to determine the availability of the defense of duress. Specifically, the defense is not available if a reasonable person in the defendant's situation would have been able to resist the alleged coercion. Wonnum failed to present credible evidence of a threat that a reasonable person would have been unable to resist. Significantly, there were reasonable legal alternatives available to Wonnum after she left Martin. She had "a chance both to refuse to do the criminal act and also to avoid [any] threatened harm."[22] Because no reasonable juror could conclude otherwise, the trial judge did not err in denying her request for a duress instruction.

Under English common law, duress was the "fear of loss of life, or else for fear of mayhem, or loss of limb ... upon sufficient reason."[23] According to Blackstone, "[a] fear of battery, or being beaten, though never so well grounded, is no duress."[24] Even though the common law defense of duress was available in the United States,[25] there were no reported cases in Delaware addressing it prior to 1973.[26] In 1973, the General Assembly established the elements of duress in Dela-

---

FAVE & A. SCOTT, HANDBOOK ON CRIMINAL LAW 379 (1972)).

**23.** SIR WILLIAM BLACKSTONE, 1 COMMENTARIES ON THE LAWS OF ENGLAND 130 (1882).

**24.** *Id.*

**25.** *See Bailey,* 444 U.S. at 409–10, 100 S.Ct. 624.

**26.** DELAWARE CRIMINAL CODE COMMENTARY § 431, at 93 (1973) ("There are no reported cases in Delaware dealing with the defense of duress (also sometimes called coercion).").  (COMMENTARY).

ware by enacting 11 *Del. C.* § 431.[27]

Section 431(a) permits the defense to be raised where the use of, or the threat to use force, is such that "*a reasonable person* in the defendant's situation would have been unable to resist."[28] Section 431(b) precludes the defense from being raised "if the defendant intentionally or recklessly placed himself or herself in a situation in which it was probable that the defendant would be subjected to duress."[29] Therefore, in order to establish a defense of duress, a defendant must show, by a preponderance of the evidence, two elements: (1) the defendant was coerced to engage in the conduct charged by the use of, or a threat to use force against the defendant or another person, which a reasonable person in her situation would have been unable to resist; and (2) that the defendant did not intentionally or recklessly place herself in a situation in which it is probable she would be subjected to duress.

A jury may not consider a defense "unless the court is satisfied that some credible evidence supporting the defense has been presented."[30] "Evidence supports a defense when it tends to establish the existence of each element of the defense."[31] "If some credible evidence supporting a defense is presented, the defendant is entitled to a jury instruction that the jury must acquit the defendant if they find that the evidence raises a reasonable doubt as to the defendant's guilt."[32]

The objective standard of Section 431(a) requires consideration of what "a reasonable person in the *actor's situation* [would] have done in response to the threat."[33] Even though Wonnum claimed she was battered by Martin, there is "no place for battered woman syndrome evidence in that assessment."[34] The "actor's situation" is not further defined in the Delaware Code or commentary but necessarily includes the time frame leading up to the crime. In that context, the availability of legal alternatives to violating the law is part of the objective analysis.

---

27. *Id.* at 95; 11 *Del. C.* § 431. In codifying the criminal law generally, the commentary notes that "[i]n many of its parts, the Delaware Criminal Code is patterned on the New York Penal Law, adopted in 1965 and effected in 1967, as well as on the American Law Institute's Model Penal Code [the "MPC"]." COMMENTARY § 101, at 2. Thus, the Assembly had the MPC available in 1973 when it codified the duress statute.

28. 11 *Del. C.* § 431(a) (emphasis added). The equivalent duress provision in the MPC code permits the defense to be raised when the threat is such that "*a person of reasonable firmness* in his situation would have been unable to resist." American Law Institute, *Model Penal Code*, § 2.09 (1985) (emphasis added).

In explaining this provision, the commentary to the MPC states that "*The standard is thus partially objective;* the defense is not established by the fact that the defendant was coerced; he must have been coerced in circumstances under which a *person of reasonable firmness* in his situation would likewise have been unable to resist." *Id.* at 367. (emphasis added). By contrast, the commentary to our provision states: "*An objective standard is proposed;* what would a reasonable person in the actor's situation have done in response to the threat. Here we are looking not to the mythical perfect man encountered in the law of torts, but to the man of ordinary firmness and resolution to obey the law, who nevertheless is unwilling to take grave risks of injury." COMMENTARY § 431, at 94–95. Thus, the General Assembly rejected the MPC's "partially objective" approach.

29. 11 *Del. C.* § 431(b).

30. 11 *Del. C.* § 303(a).

31. 11 *Del. C.* § 303(b).

32. 11 *Del. C.* § 303(c).

33. COMMENTARY § 431, at 95.

34. *New Jersey v. B.H.*, 183 N.J. 171, 870 A.2d 273, 290 (2005).

In *United States v. Bailey*,[35] the United States Supreme Court addressed the consequences of the availability of legal alternatives to violating the law in a case involving an escape from a federal prison. Citing prison conditions, the defendants raised the defense of duress. Under federal law, escape is a continuing offense. To support this defense, the defendants focused on the allegedly inhumane conditions in the jail and threats of beatings and death made against them by guards while imprisoned.[36] The trial judge refused to give a duress instruction, and the Court of Appeals, by a divided court, reversed.

The United States Supreme Court upheld the denial of the duress instruction because there was no evidence of a bona fide effort to surrender or return to custody as soon as the claimed duress lost its coercive force. In recognizing the common law defenses of duress and self-defense, the Court stated that "[u]nder any definition of these defenses, one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail."[37]

The defense of duress fails as a matter of law in this case. Once Wonnum left Martin, it is undisputed that she had the chance both to refuse to do the criminal act and to avoid the threatened harm. A reasonable person would refuse to commit the robbery Martin solicited and seek refuge elsewhere. In *Bailey*, the defendants argued, as Wonnum does here, that the jury should decide whether the defense of duress has been established. The United States Supreme Court held otherwise:

> The requirement of a threshold showing on the part of those who assert an affirmative defense to a crime is by no means a derogation of the importance of the jury as a judge of credibility. Nor is it based on any distrust of the jury's ability to separate fact from fiction. On the contrary, it is a testament to the importance of trial by jury and the need to husband the resources necessary for that process by limiting evidence in a trial to that directed at the elements of the crime or at affirmative defenses. If, as we here hold, an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense.[38]

As in *Bailey*, the trial court and the jury did not have to be burdened with testimony supporting other elements of the defense because a reasonable person would have been able to resist.

The Supreme Court of New Hampshire also has upheld the denial of a duress instruction where lawful alternatives are available to a defendant. In *New Hampshire v. Daoud*,[39] the defendant attempted to raise a duress defense by introducing evidence of battered woman syndrome to a charge of driving while intoxicated, alleging that her boyfriend had forced her to drive her car.[40] The Supreme Court of New Hampshire found that the trial court had properly rejected this defense because she presented "no evidence which could

---

**35.** 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

**36.** *Id.* at 398–99, 100 S.Ct. 624.

**37.** *Id.* at 410, 100 S.Ct. 624.

**38.** *Id.* at 416, 100 S.Ct. 624.

**39.** 141 N.H. 142, 679 A.2d 577.

**40.** *Id.* at 579.

overcome the State's proof that she had lawful alternatives to violating the law." [41]

The availability of lawful alternatives to violating the law is a necessary component to the determination of whether a reasonable person in the defendant's situation would have been unable to resist the alleged coercion. Wonnum was away from Martin at another person's house when Boyd and Jackson arrived to pick her up. A reasonable person in Wonnum's situation would have had several legal alternatives to robbing and killing Jackson, including reporting Martin's conduct to the police, avoiding Martin altogether, and seeking refuge from him elsewhere.

I do agree with the majority that the psychological report was relevant to showing Wonnum's state of mind in this case.[42] To that extent, I concur with Part I of the opinion. Even though the psychological report was relevant to Wonnum's state of mind, the ruling of the trial judge excluding it was harmless beyond a reasonable doubt [43] because credible evidence tending to establish each element of the defense of duress was not presented. After leaving Martin, a reasonable person in the defendant's situation would have been able to refuse to do the criminal act and avoid any threatened harm. I dissent from the majority's conclusion that the trial judge committed reversible error in denying a jury instruction on duress. I concur with Part III of the opinion.

Accordingly, I would affirm the convictions in this case.

---

**41.** *Id.* at 582.

**42.** D.R.E. 702; *see New Jersey v. B.H.,* 183 N.J. 171, 870 A.2d 273, 287–91 (2005).

**43.** *See Van Arsdall v. State,* 524 A.2d 3, 10 (Del.1987).