The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Gertrude Cecille REED, Defendant-Appellant.

No. 83CA1385.

Colorado Court of Appeals, Div. I.

Dec. 27, 1984.

Rehearing Denied Jan. 17, 1985.

Certiorari Pending as of May 20, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colo. State Public Defender, Claire Levy, Deputy State Public Defender, Denver, for defendant-appellant.

VAN CISE, Judge.

Defendant, Gertrude Cecille Reed, appeals a judgment of conviction based on a jury verdict finding her guilty of second degree murder and a count seeking enhanced punishment for commission of a crime of violence. We affirm.

The evidence showed that Mrs. Reed and her husband, Reginald Reed, had had a series of violent domestic disputes. Mr. Reed had decided to obtain a divorce.

On the evening of February 23, 1983, the two began to argue. He was packing and intended to leave that night. At some point during the argument Mrs. Reed picked up a gun which she had purchased three weeks before. Holding the gun, she locked herself in the bathroom. When she refused to let him in, he pushed in the door, breaking the door frame. They then went into the living room and the argument became more heated.

Their 13-year-old daughter, upset by her parents' fighting, ran from the house wearing only pajamas and socks. Mr. Reed told her to come back; then he went after her. Mrs. Reed screamed, "Call the police," and ran after the other two. Mr. Reed caught the child and grabbed her by the neck. She tried to get away, calling, "Help me, mamma, help me." Mrs. Reed reached the scene, screamed, and shot Mr. Reed. He died the next morning. She was charged with second degree murder.

At trial, Mrs. Reed claimed she acted in defense of her daughter and herself. Her evidence was to the effect that she was a battered woman who feared for her child's life and her own. The prosecution presented evidence indicating that she was an angry, aggressive person who had killed her husband because he was about to leave her. The jury found her guilty on both charges.

I.

Mrs. Reed claims that the trial court erred in rejecting two tendered instructions concerning self-defense. We disagree.

A. Deadly weapon—the gun.

The jury was instructed that it was an affirmative defense to second degree murder for Mrs. Reed to use deadly physical force if:

"1. She reasonably believed a lesser degree of force was inadequate, and

"2. (a) She had reasonable grounds to believe, and did believe that she or another person was in imminent danger of being killed or receiving great bodily injury, or

"(b) Reginald Reed was committing or reasonably appeared about to commit first degree assault or second degree assault upon her or another person."

See § 18–1–704(2), C.R.S. (1984 Cum. Supp.).

The jury was separately instructed that: "A person commits a crime of assault in the first degree if:

Under circumstances manifesting extreme indifference to the value of human life, he knowingly engages in conduct which creates a grave risk of death to another person, and thereby causes serious bodily injury to any person."

This instruction followed the wording of § 18–3–202(1)(c), C.R.S. (1978 Repl.Vol. 8) of the first degree assault statute.

Mrs. Reed tendered, and the trial court rejected, an additional instruction based on § 18–3–202(1)(a), C.R.S. (1978 Repl.Vol. 8). That instruction stated:

"A person commits a crime of assault in the first degree if:

With intent to cause serious bodily injury to another person, he causes serious bod-

ily injury to any person by means of a deadly weapon."

Defense counsel offered this "deadly weapon" instruction to buttress Mrs. Reed's theory that Mr. Reed had released the child and had turned upon Mrs. Reed, and so it was reasonable for her to assume that he would take the gun from her and kill her with it.

It was properly refused. There was nothing in the record to show that Mr. Reed had released the child and turned on Mrs. Reed. Nor was there any showing that she believed he intended to use the gun on her. And there was no evidence that Mr. Reed had ever used a weapon to injure Mrs. Reed, or that he had ever caused her serious bodily injury.

### B. Deadly weapon—bare hands.

Mrs. Reed contends the trial court also erred in not giving another tendered "deadly weapon" instruction based on her alternative theory of self-defense—that Mr. Reed was strangling the child and that Mrs. Reed had to shoot him in order to save her child. She argued that his hands, used to strangle the child, were deadly weapons and that the jury should have been so instructed.

There was no evidence to support such an instruction, and the trial court correctly refused to give it. There was no evidence that Mrs. Reed perceived her daughter to be in danger, or that she even saw that Mr. Reed was holding the daughter by the neck, much less "strangling" her. And, the child did not testify that there was any strangling.

### II.

Above, we quoted the instruction concerning the affirmative defense of use of deadly physical force if Mrs. Reed reasonably perceived that she or her daughter was in imminent danger of being killed or receiving "great bodily injury." "Great bodily injury" is not statutorily defined.

The trial court instructed the jury that "great bodily injury" meant "the same thing as serious bodily injury." The court defined "serious bodily injury" as

"Bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body."

Mrs. Reed asserts that "great bodily injury" is less than "serious bodily injury" and that to instruct otherwise was reversible error. We agree with the trial court.

The definition given by the trial court for "serious bodily injury" came verbatim from § 18–1–901(3)(p), C.R.S. (1978 Repl.Vol. 8). "Bodily injury" differs in degree from "serious bodily injury." *People v. Benjamin*, 197 Colo. 188, 591 P.2d 89 (1979). But, there is no rational basis for distinguishing between "great" and "serious" as applied to bodily injury. *See Barbee v. State*, 267 Ind. 299, 369 N.E.2d 1072 (1977) ("great bodily injury" defined as "serious and violent injury which could reasonably result in loss of health, life or limb.")

### III.

Finally, we reject Mrs. Reed's contention that the trial court erred in not submitting a "no retreat to the wall" instruction. The issue was not raised by the facts or in argument and, therefore, the trial court did not err in refusing the tendered instruction. *Cf. People v. Sepeda*, 196 Colo. 13, 581 P.2d 723 (Colo.1978).

Judgment affirmed.

PIERCE and TURSI, JJ., concur.