The **PEOPLE** of the State of
Colorado, Petitioner,

v.

Manuela S. **GARCIA**, Respondent.

No. 99SC772.

Supreme Court of Colorado,
En Banc.

June 25, 2001.

Rehearing Denied Aug. 6, 2001.

⊷834(3)

Ken Salazar, Attorney General, Matthew S. Holman, Assistant Attorney General, Appellate Division Criminal, Justice Section, Denver, CO, Attorneys for Petitioner.

Ann M. Roan, Denver, CO, Attorney for Respondent.

Nancy S. Ehrenreich, University of Denver, College of Law, Denver, CO, Attorney for Amicus Curiae The Colorado Women's Bar Association and Project Safeguard.

Justice RICE delivered the Opinion of the Court.

We issued a writ of certiorari to review the court of appeals' judgment in *People v. Garcia*, 1 P.3d 214 (Colo.App.1999) reversing Defendant's conviction. Defendant was convicted by a jury of second-degree murder and a crime of violence after killing her husband with an ax. The court of appeals held that reversal was required because the trial court's instructions improperly characterized second-degree murder-provocation under section 18–3–103, 6 C.R.S. (2000), as a lesser included offense of first and second-degree murder. *Id.* at 219. The court also

held that the trial court erred in refusing to instruct the jury that Defendant had no duty to retreat before exercising her right to self-defense. *Id.* at 220. Finally, the court held that the trial court erred in failing to instruct the jury that one may justifiably use deadly force to prevent a sexual assault. *Id.* at 222.

We granted certiorari to review the court of appeals' determinations that the trial court erred in its jury instructions and, whether such error would require reversal. We now hold that the trial court erred by: (1) instructing the jury that second-degree murder-provocation is a lesser included offense of first-degree murder and second-degree murder; (2) refusing to instruct the jury on the issue of retreat; and (3) refusing to instruct the jury that one may justifiably use deadly force to prevent a sexual assault. We also hold that these errors constituted reversible error and thus affirm the court of appeals' judgment reversing Defendant's conviction.

## FACTS AND PROCEDURAL HISTORY

On July 25, 1996, Defendant killed her husband with a long handled ax. At trial, Defendant presented evidence that her husband had repeatedly verbally, physically and sexually assaulted her during their marriage. Defendant also presented expert testimony suggesting that Defendant had suffered from Battered Woman Syndrome as a result these assaults. Defendant testified that almost every day during the week preceding the murder, the victim had sexually assaulted her and that she had feared more of these attacks. Defendant further testified that on the night of the murder, she and the victim had argued, he had pushed her, and she had gone to bed that night feeling afraid of her husband. Defendant testified that immediately prior to the murder, her husband had violently awakened her, attempted to sexually assault her, and then threatened to kill her. Finally, Defendant testified that she "snapped" and hit her husband with an ax after he gave her a look that meant that she was "going to get hurt pretty bad."

Defendant was charged with first-degree murder and the prosecution sought sentencing under section 16–3–309, 6 C.R.S. (2000)

for violent crimes. At the conclusion of the evidence, the trial court instructed the jury as to the elements of first-degree murder and violent crime. The jury was also instructed that second-degree murder and the crime of second-degree murder-provoked passion were lesser included offenses of first-degree murder and that the prosecution bears the burden of proving beyond a reasonable doubt every element of such offenses. Finally, the trial court instructed the jury as to a defendant's right to use deadly, physical force when the defendant reasonably believes that a lesser degree of force would be inadequate and where the defendant reasonably believes that she or another person is in imminent danger of being killed or receiving great bodily injury. The trial court refused, however, to tender an instruction stating that a defendant may use deadly force to prevent a sexual assault. Similarly, the trial court rejected Defendant's proposed "no-duty to retreat" instruction because it found that the evidence did not raise the issue of retreat. The jury convicted Defendant of second-degree murder.

The court of appeals reversed the conviction, holding that the trial court's instructions mischaracterized second-degree murder-provocation as a lesser-included offense of first and second-degree murder and improperly imposed a reduced burden on the prosecution to prove the elements of provocation beyond a reasonable doubt, rather than to prove the lack of provocation. *Garcia,* 1 P.3d at 218. The court determined that the instruction constituted plain error thus necessitating reversal of the conviction and a new trial. *Id.* at 219.

The court also concluded that the issue of retreat had been raised by the evidence, placed in issue, and argued. Thus, the court held that Defendant was entitled to an instruction on the doctrine of no-retreat and that the failure to give such an instruction would also have constituted reversible error. Finally, the court held that the trial court

erred in declining to instruct the jury that one may justifiably use deadly force to prevent a sexual assault and that its refusal would also have constituted reversible error. Accordingly, the court of appeals reversed the conviction and remanded the case for a new trial.

We granted certiorari to determine whether the court of appeals properly concluded that the trial court's instructions concerning second-degree murder-provocation constituted reversible error. We also granted certiorari to determine whether the trial court erred in refusing to give a no-duty to retreat instruction and an instruction concerning a defendant's right to use deadly force to prevent a sexual assault.[1]

## ANALYSIS

This case concerns the appropriate treatment of the issue of provocation following the legislature's 1996 amendment of the second-degree murder statute under section 18-3-103. Because we have not previously interpreted the amended statute, our analysis includes a review of the amendment's legislative history, analogous statutes and cases interpreting those statutes. This case also presents the opportunity for us to address issues concerning the doctrine of no-retreat and of a defendant's right to use deadly force to prevent a sexual assault.

### A. Standard of Review

Defendant argues that the trial court failed to correctly instruct the jury in this case. In addressing Defendant's arguments, we must first determine the proper standard under which to evaluate the trial court's jury instructions.

▆▆▆ It is the duty of the trial court to instruct the jury on all matters of law. *Hansen v. State Farm Mut. Auto. Ins. Co.,* 957 P.2d 1380, 1384 (Colo.1998); *Mattas v. People,* 645 P.2d 254, 257 (Colo.1982); *People v.*

---

1. We granted certiorari on the following issues:
   1. Whether the instructions concerning second-degree murder-provocation constituted reversible error.
   2. Whether the trial court erred when it refused to give a "retreat to the wall" instruc-

tion in conjunction with instructions on self-defense.
   3. Whether the trial court erred in refusing to give the defendant's justifiable homicide instruction concerning defense against a sexual assault.

*Woods,* 179 Colo. 441, 441, 501 P.2d 117, 117 (1972). However, a trial court need not act as an advocate for either party by crafting instructions embodying a party's theory of the case. *Hansen,* 957 P.2d at 1384.

■ If a defendant lodges no objection to a trial court's jury instruction, a plain error standard should be applied in reviewing the instruction. *People v. Dunlap,* 975 P.2d 723, 737 (Colo.1999); *Bogdanov v. People,* 941 P.2d 247, 255 (Colo.1997); *Walker v. People,* 932 P.2d 303, 311 (Colo.1997); *People v. Davis,* 794 P.2d 159, 189 (Colo.1990); *People v. Romero,* 694 P.2d 1256, 1268 (Colo. 1985); *see* Crim. P. 52(b). "Plain error occurs when the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Walker,* 932 P.2d at 311; *People v. Kruse,* 839 P.2d 1, 3 (Colo. 1992); *Wilson v. People,* 743 P.2d 415, 420 (Colo.1987). Plain error also requires a reasonable possibility that the alleged error contributed to the defendant's conviction. *Ramirez v. People,* 682 P.2d 1181, 1183 (Colo. 1984). Thus, with respect to jury instructions, reversal under a plain error standard requires a defendant to "demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction." *Bogdanov,* 941 P.2d at 255–56; *People v. Rubanowitz,* 688 P.2d 231, 239 (Colo.1984).

■ On the other hand, when a defendant does object to an instruction, a harmless error standard applies on review to the preserved issue. *Dunlap,* 975 P.2d at 737. Under a harmless error standard, reversal is required unless the error does not affect substantial rights of the defendant. Crim. P. 52(a); *Salcedo v. People,* 999 P.2d 833, 841 (Colo.2000). We have previously held that "[w]here the error is not of constitutional dimension, the error will be disregarded if there is not a reasonable probability that the error contributed to the defendant's conviction." *Salcedo,* 999 P.2d at 841.

With these principles in mind, we now turn to Defendant's arguments that the trial court erred in its jury instructions in this case.

### B. Provocation

Defendant argues that the trial court's jury instructions on second-degree murder-provocation were erroneous in two respects: (1) they prevented the jury from considering the issue of provocation if it found the elements of second-degree murder had been proven, and (2) they misinformed the jury that the state had the burden of proving the existence of provocation beyond a reasonable doubt. We agree.

Second-degree murder is defined in section 18–3–103 in the following manner:

(1) A person commits the crime of murder in the second-degree if the person knowingly causes the death of a person....

(3)(a) Except as otherwise provided in paragraph (b) of this subsection (3), murder in the second-degree is a class 2 felony.

(b) Notwithstanding the provisions of paragraph (a) of this subsection (3), murder in the second-degree is a class 3 felony where the act causing the death was performed upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the defendant sufficiently to excite an irresistible passion in a reasonable person....

In this case, after instructing the jury on the elements of first-degree murder and violent crime, the trial court then instructed the jury that it could find Defendant guilty of a lesser included offense if it was not satisfied beyond a reasonable doubt that Defendant was guilty of the crime charged. In doing so, the trial court stated, "The offense of Murder in the First-degree, as charged in the Information in this case, necessarily includes the lesser offense of Murder in the Second-degree and Murder in the Second-degree—Provoked Passion." (R. at vol. III, p. 743.) The trial court then instructed the jury as to the elements of second-degree murder, and second-degree—provoked passion, which it defined using the elements of second-degree murder and by adding the elements of provocation.

The trial court also reminded the jury that the prosecution bore the burden of proving each material element of any lesser included offense beyond a reasonable doubt. Finally, the trial court instructed the jury that it could not find the defendant guilty of "more than one of the following offenses: Murder in the First-degree[,] Murder in the Second-degree [and] Murder in the Second-degree—Provoked Passion." *Id.* at 744.

▮ The record indicates that Defendant did not object to these instructions at trial. Therefore, we will apply a plain error standard and will reverse the conviction only upon a finding that the instructions affected a substantial right, and also that there is a reasonable possibility that the error contributed to Defendant's conviction.[2] *See Bogdanov*, 941 P.2d at 255–56; *Rubanowitz*, 688 P.2d at 239.

Subsection (3)(b) of the second-degree murder statute, which concerns provocation, was added to the statute in 1996. Prior to this amendment, heat of passion manslaughter was a separate offense under section 18–3–104(2)(b), 6 C.R.S. (1995). A review of the legislative history indicates that by passing the amendment, the General Assembly intended to respond to confusion in jury instructions concerning the interplay between second-degree murder and heat of passion manslaughter. Hearings on H.B. 1087 Before the House Judiciary Committee, 60th General Assembly, 2d Sess. (Jan. 16, 1996, 3:01 pm) (statement of Bill Ritter, Denver District Attorney).

▮ Specifically, the amendment was intended to address the order in which juries should decide the relevant issues. Bill Ritter, Denver District Attorney, testified during hearings on the bill that,

[A] jury handles this ... in the following [way]: They are instructed on second-degree murder and they ... must deliberate on the crime of second-degree murder. If they find beyond a reasonable doubt that a person has committed the crime of second-degree murder, then the judge says, now I'm going to give you these interrogatories on whether it was committed under the heat of passion.

*Id.* Thus, we conclude that the General Assembly intended for a jury to consider the issue of provocation after determining that a defendant is guilty of second-degree murder.

▮ We find that the jury instructions in this case contravened the intent of the legislature. By characterizing second-degree murder-provocation as a separate offense, and by instructing the jury that it could not find Defendant guilty of both second-degree murder and second-degree murder provocation, the jury instructions could have prevented the jury from considering provocation after having determined that Defendant was guilty of second-degree murder.[3]

The relevant legislative history also indicates that the issue of provocation was intended by the General Assembly to be a mitigator to second-degree murder that would reduce a charge of second-degree murder from a class two felony to a class three felony, rather than a separate offense. *Id.*

2. We are unpersuaded by Defendant's argument that a higher constitutional error standard should apply in this case because the alleged errors in the jury instructions are of a constitutional nature. Although we have previously held that due process requires that a trial court properly instruct a jury on every element of a substantive offense so that the jury may determine whether all the elements have been established beyond a reasonable doubt, *Bogdanov*, 941 P.2d at 252, Defendant does not dispute that the jury was properly instructed on the elements of the substantive offense of second-degree murder. Instead, the error alleged by Defendant concerns provocation, which, as discussed below, we find to be a mitigating factor of second-degree murder, rather than a separate offense.

3. We reject the prosecution's argument that the instructions as a whole adequately informed the jury. Jury instructions which, if read as a whole, adequately inform the jury of the law, do not constitute reversible error. *People v. Galimanis*, 944 P.2d 626, 630 (Colo.App.1997). As discussed above, the instructions in this case improperly characterized the crime of second-degree murder, when committed under provocation, as a separate crime. In contrast, the court of appeals has previously upheld instructions similar to those at issue here because it found that the instructions as a whole correctly instructed the jury as to provocation under the old statutory scheme. *People v. Rosales*, 911 P.2d 644, 652 (Colo.App.1995); *People v. Wadley*, 890 P.2d 151, 154 (Colo.App.1994); *People v. Seigler*, 832 P.2d 980, 984 (Colo.App.1991).

Indeed, the testimony during the legislative hearings indicates that the amendment was intended to parallel the first-degree assault statute, under which provocation is treated as a mitigator. *Id.*[4] In fact, proponents of the amendments to the second-degree murder statute testified that juries should be instructed concerning second-degree murder-provocation in a manner similar to that in which juries are instructed on first-degree assault. *Id.*

Thus, we conclude that under the second-degree murder statute, provocation represents a mitigating factor, rather than a separate offense. *See Walker,* 932 P.2d at 306 n. 5 ("In 1996 the General Assembly amended the criminal code, eliminating the offense of heat of passion manslaughter and providing heat of passion as a factor in mitigation of second-degree murder within the statute defining second-degree murder."). As such, we hold that the prosecution does not bear the burden of proving the existence of provocation beyond a reasonable doubt, but instead bears the burden of proving a *lack* of provocation under the second-degree murder statute.

The jury instructions in this case inaccurately characterized second-degree murder-provocation as a lesser-included offense of first and second-degree murder, rather than as a mitigating factor that could reduce Defendant's sentence. *See Garcia,* 1 P.3d at 219. The jury was also incorrectly instructed that the prosecution was required in this case to *prove* the elements of provocation beyond a reasonable doubt, rather than to *disprove* the elements of provocation. *See id.; People v. Tenneson,* 788 P.2d 786, 795 (Colo.1990) (holding that where a defendant's sentence is dependent upon a fact extraneous to the guilt determination, such facts must be proven beyond a reasonable doubt).

These errors in the jury instructions were exacerbated by the prosecution's misleading comments during its closing argument:

> In looking at these charges ..., first you look at first-degree murder and make your decision.... And if you find that she's guilty of that, then you can't find her guilty of these two.... If you don't think that she [committed first-degree murder], then go down to the second one, second-degree murder, you decide on that. If you find her guilty of that, you don't go on.

(R. at vol. XV, pp. 160–61.) *See People v. Toler,* 9 P.3d 341, 354 (Colo.2000) (holding in that case that the prosecution's comments may have focused the jury on the erroneous portion of the jury instructions).

We find that the trial court's instructional errors, coupled with the prosecution's misleading comments, could have prevented the jury from considering the issue of provocation after finding Defendant guilty of second-degree murder. The instructions also misinformed the jury that the prosecution had the burden of proving the existence of provocation beyond a reasonable doubt. We conclude that reversal is required under the plain error standard because Defendant's substantial rights were adversely affected, and because there is a reasonable possibility that the errors contributed to Defendant's conviction. Therefore, we affirm the court of appeals' judgment reversing Defendant's conviction.

## C. DUTY TO RETREAT

Next, Defendant argues that the trial court erred by refusing to instruct the jury that she had no duty to retreat before using deadly force in self-defense. We agree.

The trial court instructed the jury on the issue of self-defense by tracking the language of section 18–1–704, stating that Defendant was entitled to use deadly physical force if (1) she reasonably believed that a lesser degree of force was inadequate, and (2) she had reasonable grounds to believe, and did believe, that she or another person was in imminent danger of being killed or receiving

---

4. The statute describing first-degree assault provides, in language nearly identical to that used in the second-degree murder statute, that provocation serves to reduce a class three felony to a class five felony. § 18–3–202, 6 C.R.S. (2000). We have previously held that provocation under the first-degree assault statute was intended to be a mitigating factor that could reduce a defendant's sentence, rather than a separate offense of first-degree assault committed under heat of passion. *Rowe v. People,* 856 P.2d 486, 492 (Colo. 1993).

great bodily injury. The trial court also instructed the jury that it could use evidence of Battered Woman Syndrome in deciding the issue of self defense.[5] Finally, the trial court instructed the jury as to Defendant's theories of the case, including her contention that she was a battered woman, and that she used deadly force while suffering from Battered Woman Syndrome and thus reasonably believed that she was acting in self-defense. It refused, however, to give a no-duty to retreat instruction because it found that the evidence did not raise the issue of retreat.[6]

 We have previously held that an instruction embodying a defendant's theory of the case must be given by the trial court if the record contains any evidence to support the theory, even if the supporting evidence consists only of highly improbable testimony by the defendant. *People v. Nunez*, 841 P.2d 261, 264 (Colo.1992); *Lybarger v. People*, 807 P.2d 570, 579 (Colo.1991); *People v. Fuller*, 781 P.2d 647, 651 (Colo.1989); *see Idrogo v. People*, 818 P.2d 752, 754 (Colo.1991) (holding that where the record contains any evidence tending to establish the defense of self-defense, the defendant is entitled to have the jury properly instructed with respect to that defense). Furthermore, "a trial court must tailor instructions to the particular circumstances of a given case when the instructions, taken as a whole, do not adequately apprise the jury of the law of self-defense from the standpoint of the defendant." *Id.; People v. Jones*, 675 P.2d 9, 14 (Colo.1984).

In *Idrogo*, 818 P.2d at 754–55, and most recently in *People v. Toler*, 9 P.3d 341, 347 (Colo.2000), we reviewed the status of the duty to retreat rule in Colorado and noted that beginning with this court's decision in *Boykin v. People*, 22 Colo. 496, 45 P. 419 (1896), Colorado had joined the majority of jurisdictions that had abandoned the common

law duty of a victim to retreat before resorting to force to defend against an aggressor. *Toler*, 9 P.3d at 348; *Idrogo*, 818 P.2d at 755–56. This principle was expressly adopted by the General Assembly when it adopted the self-defense statute codified in section 18–1–704. *Toler*, 9 P.3d at 349; *see Idrogo*, 818 P.2d at 755.

Under section 18–1–704(3)(c), however, initial aggressors must retreat before employing physical force in self defense. *Toler*, 9 P.3d at 350. We have therefore held that the no-duty to retreat rule does not apply when a non-aggressor pursues an initial aggressor who has withdrawn because in that situation, the non-aggressor in fact becomes the aggressor. *Idrogo*, 818 P.2d at 755; *People v. Sepeda*, 196 Colo. 13, 19, 581 P.2d 723, 731 (1978).

In *Sepeda*, the defendant was engaged in a fight when he ran to his house and retrieved a pistol, which he fired into a group of people who were still fighting. 196 Colo. at 17, 581 P.2d at 726. The shots hit three people and ended the fight. *Id.* The defendant then approached one of the people who had been shot, and shot him again, causing his death. *Id.* We held that the defendant was not entitled to a no-duty to retreat instruction because at the time defendant shot the victim, he was under no further danger, and instead had become the assailant by continuing to "fire at his unarmed and apparently helpless foe." *Id.* at 20, 581 P.2d at 731.

Similarly, the court of appeals held in *People v. Reed*, 695 P.2d 806, 808 (Colo.App. 1984), that the trial court properly refused to give a no-duty to retreat instruction where the issue was not raised by the facts or argument. In that case, the evidence indicated that the defendant and her husband had violently argued, upsetting their teenage daughter, who then ran from their house.

---

**5.** We have not previously addressed the issue as to whether a self-defense instruction should be given in a case involving Battered Woman Syndrome. *But see People v. Yaklich*, 833 P.2d 758, 762 (Colo.App.1991). Because the parties in this case do not dispute the propriety of the trial court's having given a self-defense instruction, we need not address the issue. Instead, our concern is whether, in light of the evidence in the record and the trial court's decision to issue a

self-defense instruction, Defendant was entitled to a no-duty to retreat instruction.

**6.** Defendant had tendered an instruction that read: "It is lawful for a woman who is in a place where she has a right to be who has reasonable grounds for believing she is being attacked to stand her ground and defend herself from such an attack. She need not attempt to retreat." (R. at vol. III, p. 713.)

*Id.* at 807. The defendant's husband had caught the child and grabbed her by the neck. *Id.* The child attempted to get away, and called to her mother for help. *Id.* Upon reaching the scene, the defendant shot her husband, causing his death. *Id.*

The facts in this case, however, are distinguishable from the cases discussed above because Defendant was not the aggressor at the time of the killing. Thus, contrary to the trial court's determination, the facts of this case raise the issue of retreat.

Defendant testified at trial that on the night of the killing, the victim had violently awakened Defendant and attempted to sexually assault her. Defendant testified that the victim was trying to choke her and had threatened to kill her. According to Defendant, after fighting to push him off of her, Defendant lunged for the ax, which was located in close proximity to the bed. Finally, the evidence indicates that after the victim gave her a look that had previously meant that she was going to "get hurt pretty bad," Defendant hit him with the ax. Unlike in the cases above, therefore, the victim had not withdrawn and Defendant was not out of danger at the time that she killed him. Indeed, the record indicates that at the time of the killing, the victim had not left the bedroom, and in fact, was still on the bed. Based on this evidence, the jury could have concluded that Defendant had a duty to retreat before using deadly force. *See Toler,* 9 P.3d at 353–54. Thus, Defendant was entitled to a no-duty to retreat instruction.

▮ Accordingly, we agree with the court of appeals' holding that the trial court erred in refusing to give a no-duty to retreat instruction in this case. Because Defendant had requested such an instruction, we apply a harmless error standard in determining whether the trial court's error warrants reversal. *See Galimanis,* 944 P.2d at 633; *People v. Williams,* 899 P.2d 306, 310 (Colo. App.1995). Because we find that the error affected Defendant's substantial rights and that it is reasonably probable that the error contributed to Defendant's conviction, rever-

sal is required here. *Salcedo,* 999 P.2d at 841. We therefore affirm the court of appeals' judgment reversing Defendant's conviction.

### D. Deadly Force

▮ Finally, Defendant argues that the trial court's instruction concerning self-defense was insufficient because it failed to state that a defendant is justified in using deadly physical force to defend himself against a sexual assault. At the time of the killing, section 18–1–704(2) provided in relevant part that:

> Deadly physical force may be used only if a person reasonably believes a lesser degree of force is inadequate and:
>
> (a) The actor has reasonable ground to believe, and does believe, that he or another person is in imminent danger of being killed or receiving great bodily injury; or . . .
>
> (c) The other person is committing, or reasonably appears about to commit . . . sexual assault as set forth in section 18–3–402 or 18–3–403, or assault as defined in sections 18–3–202 and 18–3–203.

§ 18–1–704(2), 6 C.R.S. (1996).

As discussed above, the trial court's instruction mirrored the language in section (2)(a) of the self-defense statute, stating only that Defendant was justified in using deadly physical force if she reasonably believed that she was in imminent danger of being killed or receiving great bodily injury. In its jury instructions, the trial court defined "great bodily injury" as: "bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part of organ of the body, or breaks, or fractures." (R. at vol. III, p. 739.) The trial court refused, however, to give Defendant's proposed self-defense instruction because it found that it either did not comply with the law, or was duplicative.[7] Nor did

---

7. Defendant's tendered instruction read: "Justifiable homicide is the killing of a human being in

necessary self-defense against a person who endeavors by violence or surprise to commit a

the trial court include an instruction stating that Defendant would be justified in using deadly force to prevent a sexual assault.

In *People v. Janes,* 982 P.2d 300, 304 (Colo. 1999), we held that a trial court's instruction on self-defense was insufficient because it did not include a directive to the jury that deadly physical force was justified where the victim reasonably appeared about to commit first or second-degree assault. In that case, the defendant had shot the victim after the victim had assaulted him. We held, therefore, that the evidence supported an instruction stating that a defendant would be justified in using deadly physical force to prevent another person from committing first or second-degree assault.

In the present case, Defendant testified that the victim had attempted to sexually assault her just before she pushed him off and reached for the ax. Defendant also testified that the victim had then given her a look that she knew to mean that she was "going to get hurt pretty bad" and that she "snapped" and hit him with the ax. (R. at vol. XII, p. 187.)

■ We therefore conclude that the evidence in this case supported an instruction embodying subsection (2)(c) of the self-defense statute, which states that a defendant is entitled to use deadly force to prevent the victim from committing either first or sec-

ond-degree sexual assault or first or second-degree assault, as defined in the statutes listed in that subsection.

■ Accordingly, we hold that the trial court erred in failing to issue such an instruction.[8] Thus, we affirm the court of appeals' judgment holding that the trial court's instructions on this issue constituted reversible error.

### CONCLUSION

In summary, we conclude that the trial court erred in mischaracterizing second-degree murder-provocation as a separate offense and by thus placing the burden of proving provocation on the prosecution. We also conclude that the trial court erred in failing to instruct the jury on the doctrine of no-retreat and that a defendant may use deadly force to prevent a sexual assault. Finally, we conclude that these errors constituted reversible error. Accordingly, we affirm the court of appeals' judgment reversing Defendant's conviction.

---

known felony, *such as rape."* (R. at vol. III, p. 716) (emphasis added).

8. Although the trial court had determined that Defendant's tendered instruction failed to accurately state the law, the tendered instruction put the trial court on notice as to Defendant's concern that the jury be instructed that deadly force may be used to prevent a sexual assault. Thus, the trial court had a duty to "cooperate with

counsel to either correct the tendered ... instruction or to incorporate the substance of such an instruction drafted by the court.". *Nunez,* 841 P.2d at 265; *see Hansen,* 957 P.2d at 1384 (holding that the trial court had satisfied its responsibility to correctly instruct the jury on the applicable law by offering counsel an opportunity to redraft a tendered instruction that misstated the law).